**IT IS SO ORDERED.**

**Dated: 12 May, 2026 05:14 PM**

Suzana Krstevski Koch
**Suzana Krstevski Koch**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AMBER ELIZABETH KOPANSKI, | ) | Case No. 25-12883 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Suzana Krstevski Koch |
| | ) | |
| RUMIZEN & WEISMAN CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 25-01080 |
| v. | ) | |
| | ) | |
| AMBER ELIZABETH KOPANSKI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION DENYING
RUMIZEN'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 51)**

This cause is before the Court on Rumizen & Weisman Co., Ltd.'s (the "Plaintiff" or

"Rumizen") Motion for Summary Judgment.  ECF No. 51.  Rumizen asks that the Court

determine, as a matter of law, that the debt owed to it by Amber Kopanski (the "Defendant" or

"Kopanski") is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) because

Kopanski deliberately dissipated a personal injury settlement in the amount of $250,000 in an

effort to avoid paying a judgment debt in the amount of $74,035.98, and that Kopanski should

1

not receive a discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(2) because she made false oaths with the intent to hinder, delay, or defraud Rumizen by concealing assets. ECF No. 51. Kopanski did not file a responsive pleading. For the reasons stated below, Rumizen's Motion for Summary Judgment is denied.

## JURISDICTION

The Court has jurisdiction over Kopanski's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order 2012-07 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this Court may hear and determine under 28 U.S.C. § 157(I), (J), and (O). Venue in this Court is proper under 28 U.S.C. § 1409.

## BACKGROUND AND PROCEDURAL HISTORY

The Parties' Relationship and Undisputed Facts

On or about June 27, 2020, Kopanski was involved in an automobile accident (the "Auto Accident"). ECF No. 51, Ex. A, 10:4. On April 22, 2022, Kopanski entered into a Professional Employment Agreement (the "Agreement") wherein Kopanski agreed to hire Rumizen to represent her in pursuit of claims for damages resulting from the Auto Accident. *Id.*, Ex. A. Pursuant to the Agreement, Kopanski agreed to pay Rumizen 33 and 1/3% percent of any proceeds recovered. *Id.*, Ex. A. Under the Agreement, if Rumizen withdrew as counsel or Kopanski discharged Rumizen as her counsel, Kopanski would be indebted to Rumizen for costs, expenses, and attorney's fees incurred by Rumizen while representing her based upon the last offer of settlement. *Id.*, Ex. A.

On June 1, 2022, Kopanski, represented by Rumizen, filed a lawsuit related to the Auto Accident against Progressive Direct Insurance Company ("Progressive") in the Cuyahoga Court

of Common Pleas (the "State Court") (Case No. CV-22-964142) (the "Auto Accident Case").
*Id.*, Ex. C.

A private mediation was held on April 11, 2024. At the mediation, Progressive offered Kopanski $190,000 to settle the Auto Accident Case. *Id.*, Ex. D. Kopanski did not accept the offer. *Id.*, Ex. D.

On April 30, 2024, Rumizen, on behalf of Kopanski, filed a notice of dismissal of the Auto Accident Case. *Id.*, Ex. C. On May 17, 2024, Kopanski terminated her "Client – Attorney Relationship" with Rumizen because Rumizen filed the notice of dismissal "without [her] permission and against [her] wishes . . . ." *Id.*, Ex. E.

Sometime in June 2024, Kopanski settled her claim directly with Progressive for $250,000; Progressive issued Kopanski a settlement check in that amount (the "Settlement Amount"). *Id.*, Ex. C and Ex. Q, 11:24-12:1. On June 27, 2024, Kopanski deposited the entire Settlement Amount in her personal checking account (the "Personal Account"). *Id.*, Ex. K.

On July 2, 2024, Rumizen informed Kopanski by email and commercial overnight carrier of its pursuit of a Notice of Attorney Charging Lien (the "Charging Lien"), asserting it was "entitled to be reimbursed [its] expenses in the amount of $10,702.65 as well as an attorney fee based on the last offer of settlement . . . ." *Id.*, Ex. G. Kopanski did not remit any funds to Rumizen.

The Collection Case and Kopanski's Financial Transactions

On July 9, 2024, Rumizen filed a complaint in the State Court styled *Rumizen Weisman CO., Ltd vs. Amber Kopanski* (Case No. CV-24-100349) (the "Collection Case") seeking to

3

collect from Kopanski the amount referenced in the Charging Lien, as well as additional amounts for breach of contract, unjust enrichment, and conversion. *Id.*, Ex. I.[1]

From the date Kopanski deposited the Settlement Amount into her Personal Account (June 27, 2024) through July 17, 2024, Kopanski withdrew $44,602.53 from her Personal Account. *Id.*, Ex. K. On July 26, 2024, Kopanski wired $177,000 from her Personal Account to Douglas Kenyon and made a cash withdrawal in the amount of $8,000. *Id.*, Ex. K. From July 17, 2024 to August 16, 2024, Kopanski withdrew or wired a total of $206,288.26 from her Personal Account. *Id.*, at Ex. K. On August 16, 2024, the ending balance in Kopanski's Personal Account balance was $2,346.28. *Id.*, Ex. K.

On August 12, 2024, Kopanski opened a business bank account (the "Business Account") with KeyBank, N.A. ("KeyBank") under her name and Osiris Plastics LLC ("Osiris"). *Id.*, Ex. L. On August 26, 2024, $174,000 was deposited into the Business Account. *Id.*, Ex. L.

On September 30, 2024, $149,387.05 remained in the Business Account, after cash withdrawals in the amount of $13,400. *Id.*, Ex. L.

On October 31, 2024, $114,922.27 remained in the Business Account, after cash withdrawals in the amount of $19,000 and additional spending for a trip to Washington D.C. *Id.*, Ex. L.

On November 12, 2024, the State Court issued a judgment (the "State Court Judgment") in the Collection Case in favor of Rumizen and against Kopanski in the amount of $74,035.98

---

[1] Kopanski filed an answer and counterclaim against Rumizen. The State Court dismissed the counterclaim on November 12, 2024.

4

with interest.  Proof of Claim No. 2-1;[2] ECF No. 51, Ex. J.[3]  On November 30, 2024, $100,471.70 remained in the Business Account.  *Id.*, Ex. L.

On December 31, 2024, $77,091.99 remained in the Business Account.  *Id.*, Ex. L.

On January 31, 2025, $51,910.90 remained in the Business Account, after a transfer in the amount of $20,000 to VanHo Law.  *Id.*, Ex. L.

On February 28, 2025, the State Court issued a garnishment notice to Kopanski and KeyBank.  *Id.*, Ex. I.  On that date, $43,291.94 remained in the Business Account.  *Id.*, at Ex. L.

On March 17, 2025, Rumizen filed a motion for an order to show cause in an effort to collect on the State Court Judgment.  *Id.*, Ex. I.  On March 20, 2025, the State Court scheduled a hearing on the motion to show cause to be held on May 14, 2025.  *Id.*, Ex. I.

By the end of March 2025, $311.82 remained in the Business Account, after cash withdrawals in the total amount of $33,000.  *Id.*, Ex. L.

On May 13, 2025, the State Court scheduled a debtor's examination of Kopanski to be held on July 9, 2025 at 1:30 p.m.

Kopanski had requested that the State Court reschedule the May 14, 2025 show cause hearing twice, and the State Court finally rescheduled the show cause hearing to be held on July 9, 2025 at 1:30 p.m., together with the debtor's examination.

---

[2]  "A court may take judicial notice of its own records."  *Watkins v. Wells Fargo Bank*, No. 3:10-1004, 2011 U.S. Dist. LEXIS 20295, at *10 (S.D. W. Va. Feb. 28, 2011); *see, e.g.*, *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); *see also* Fed. R. Evid. 201(c).  On October 1, 2025, Rumizen filed Proof of Claim Number 2, in the amount of $77,914.25 based on the State Court Judgment of $74,035.98, plus $3,878.27 in interest.  The Court takes judicial notice of Proof of Claim No. 2-1 and the documents attached thereto, as well as other filings and orders entered in this case and the Main Case.

[3]  On summary judgment in the Collection Case, the State Court found that there was "no dispute that Rumizen [] timely assert[ed] its charging lien" and that it also "demonstrated a breach of contact by [Kopanski] due to failure to remit [Rumizen's] fee from the settlement proceeds."  The State Court further found that, because Rumizen "obtained a settlement offer of $190,000.00," it was "entitled to its . . . expenses incurred in the amount of $10,702.65 and its contractual attorney fee in the amount of $63,333.33. . . ."  ECF No. 51, Ex. J.

The State Court held the show cause hearing and the debtor's examination on July 9, 2025 at 1:30 p.m. Kopanski did not appear, and the State Court granted the motion for an order to show cause.

<u>The Debtor's Main Case</u>

On July 9, 2025 at 1:39 p.m., Kopanski filed a *pro se* petition for bankruptcy relief under Chapter 7 of Title 11 of the United States Code. ECF No. 1 in Case No. 25-12883 (the "Main Case"). Kopanski filed her schedules on July 23, 2025. Main Case ECF No. 15. In Schedule A/B, Paragraph 17, Kopanski did not list any bank accounts in which she has "any legal or equitable interest." *Id.* In Schedule E/F, Kopanski did not list any creditors holding unsecured claims. In her Statement of Financial Affairs ("SOFA"), Paragraph 4, Kopanski indicated she did not receive any income since January 1, 2023. In Paragraph 5, Kopanski indicated she did not receive any other income during the filing year (2024) or the two previous calendar years.

Kopanski filed amended schedules and an amended SOFA on August 5, 2025.[4] Main Case ECF No. 21. In amended Schedule A/B, Paragraph 17, Kopanski listed only one "Keybank" checking account to which she has "any legal or equitable interest in." *Id.* On amended Schedule A/B, Paragraph 19, when asked if she has any legal or equitable interest in an LLC, Kopanski answered "no." *Id.* In amended Schedule A/B, Paragraph 25, Kopanski affirmed there were no further financial assents she did not already list. *Id.* In amended Schedule E/F, Kopanski listed Rumizen as a creditor holding an unsecured claim in the amount of $94,000. *Id*.

In the amended SOFA, Paragraph 4, Kopanski listed income of $22,000 from operating a business from January 1, 2023 to December 31, 2024. *Id.* In amended SOFA Paragraph 5, Kopanski listed income of $250,000 for "pain and suffering" from "personal injury lawsuit" and

---

[4] The amended schedules do not include a Schedule J summary of Kopanski's monthly expenses.

6

25-01080-skk   Doc 85   FILED 05/12/26   ENTERED 05/13/26 08:54:18   Page 6 of 44

$15,000 for living expenses from a "loan pre-settlement." *Id.* In amended SOFA Paragraph 9, when asked if "within one year" before filing for bankruptcy had she been "a party in any lawsuit, court action, or administrative proceeding," Kopanski answered "no." *Id.* Amended SOFA Paragraph 18 asked Kopanski if "[w]ithin 2 years" she "[sold], trade[d] or otherwise transfer[red] any property to anyone, other than property transferred in the ordinary course of [her] business or financial affairs." Kopanski answered "No." *Id.* Amended SOFA Paragraph 27 required Kopanski to disclose any businesses or connections to businesses within four years prior to filing for bankruptcy. Kopanski listed only a self-employment association with Uber Eats from July 2021 to July 2025. *Id.*

<u>The August 18, 2025 Meeting of Creditors</u>

The Chapter 7 Panel Trustee (the "Trustee") held a § 341 Meeting of Creditors on August 18, 2025 (the "August 18 Meeting of Creditors"). The Trustee questioned Kopanski on her finances, including the existence of bank accounts, transfers, and purchases.

> Trustee: [W]hat caused you to file this case?
>
> Kopanski: To, you know, get the debt gone, you could say.
>
> Trustee: Which debt?
>
> Kopanski: Yes, I'm actually – you know, I filed for disability, so I cannot work, so yeah.
>
> . . .
>
> Trustee: Have you ever owned or operated your own business?
>
> Kopanski: Yes I have.
>
> Trustee: And what kind?
>
> Kopanski: I've owned it, but it wasn't operating.
>
> Trustee: All right. What kind of business was it?
>
> Kopanski: A startup company.
>
> Trustee: Did you ever operate it?

7

Kopanski: No, sir.

Trustee: Did it ever earn any income?

Kopanski: No, sir.

Trustee: What was it called?

Kopanski: Osiris Plastic.  It never got up and operating though.

. . .

Trustee: The KeyBank checking account ending 8993 [the Personal Account], is that your only bank account?

Kopanski: Yes, sir.

Trustee: Has that been your only bank account within the last two years?

Kopanski: Yes, sir.

Trustee: Is that the only bank account you've used?  And when I ask you that, have you used anyone else's bank account to deposit your money into in the last two years?

Kopanski: No, sir.

. . .

Trustee: You settled a personal injury claim arising from your vehicle accident approximately one year ago in June, correct?

Kopanski: Yes, sir, it was over a year ago.

Trustee: Okay.  And you received about $250,000 from that claim; am I correct?

Kopanski: Yes, sir, that's correct.

Trustee: And that was received from Progressive?

Kopanski: That's correct.

Trustee: Which bank account was that deposited into?

Kopanski: Into the 8993 [the Personal Account].

ECF No. 51, Ex Q, 4:14-19, 5:20-6:10, 8:5-15, 11:20-12:5.

Counsel for Rumizen also questioned Kopanski at the August 18 Meeting of Creditors.

Many of those questions related to transactions in and out of Kopanski's Personal Account:

Counsel: [Y]ou testified to the Trustee that you received $250,000 that was deposited into your personal KeyBank account.  We also have copies of

those documents that was presented to us via subpoena to KeyBank. There was a transfer to a Douglas Kennon on July 26th for $177,000. Do you remember that transaction?

Kopanski: I do.

Counsel: Who is Douglas Kenyon and what was the purpose of that transfer?

Kopanski: I was trying to buy a house.

Counsel: Okay. Can you elaborate who's Douglas Kennon and why the money was transferred to him?

Kopanski: Yes. He was the one that was involved with me trying to buy the house and, you know, make an investment.

. . .

Counsel: And what happened with that – with the purchase of the house and that $177,000?

Kopanski: I'm still in works of trying to get things like that taken care of. It's – it's still in litigation.

Counsel: What do you mean "litigation"?

Kopanski: Yeah, we're having trouble with a lot of different things because of the deed transfer and there's – I tried to buy it, but it's – it – it's like in, in a stale mode.

Counsel: So what happened with that $177,000?

Kopanski: They still have it.

Counsel: Who still has it?

Kopanski: The – people I was trying to but the house from.

Counsel: So you transferred the money to Douglas Kenyon. Was he the owner of the house?

Kopanski: No, he was the one that was, you know, trying to, you know, do the deal for me. I didn't have a realtor or anything, I was just using a – you know, like a word of mouth thing.

Counsel: Okay. So Douglas Kenyon still has $177,000 or the – or the homeowners have the $177,000?

Kopanski: As far as I know the homeowners do at this time.

ECF No. 51, Ex. Q, 19:18-20:8, 20:11-21:9.

Counsel for Rumizen also asked questions related to Kopanski's startup, Osiris Plastics:

9

Counsel: Okay.  You indicated that you owned a business or tried to start a business by the name of Osiris Plastics, LLC; is that correct?

Kopanski: Yes, sir.

Counsel: Do you have a bank account open with Osiris Plastics?

Kopanski: No, sir.

Counsel: There wasn't a bank account at KeyBank with Osiris Plastics, LLC with the address of 119 Bell Street, Chagrin Falls [the Business Account]?

Kopanski: Well, so it – it wasn't an operating business, but I was trying to get started up, so it – it wasn't like a corporate account, but, yeah, I did have like a – like a small bank account –

Counsel: Okay.

Kopanski: – with that name on it, but it – it wasn't anything, you know, like corporate or anything.

Counsel: Did you deposit any money into that Osiris Plastics' [Business] account?

Kopanski: I did it sometimes, yeah.

Counsel: How much did you deposit into the Osiris Plastics [Business] account?

Kopanski: It varied.

Counsel: Okay.  What was the largest balance that you had on deposit in that [Business] account at any given time?

Kopanski: Oh, gosh, I don't know.  Sometimes it was a lot, sometimes it was nothing.

Counsel: Can you give me an approximation of what "a lot" would be?

Kopanski: 300, $400,000 at some time.  I was trying to get machines and things like that.  I don't see where this is going, this has nothing to do with any of this, you know.  I filed bankruptcy, that's it.

. . .

Counsel: I'm showing in Osiris Plastics' [Business Account] with you listed as the co-owner and there's a deposit of $174,000 in that account sometime in August, on August 26, 2024.  What was the source of those funds?

Kopanski: Like I said, I've been trying to get my business up and going for many years, so, you know, it – it was investors.

Counsel: So the $177,000 that you paid for the purchase of the house is still with the homeowner.  The $174,000 that was deposited into this Osiris Plastics' [Business] account was from investors?

Kopanski: Yes, sir.

> Counsel: Who were the investors in that business?
>
> Kopanski: Just various individuals.

ECF No. 51, Ex. Q, 21:14-22:21, 23:9-23.

<u>The September 15, 2025 Meeting of Creditors</u>

The August 18, 2025 Meeting of Creditors was adjourned and continued to September 15, 2025 (the "September 15 Meeting of Creditors"). The Trustee asked Kopanski additional questions related to the Settlement Amount, her Personal Account, her Business Account, and her prior testimony:

> Trustee: All right. So we're talking about the 250,000 you received from a personal injury settlement.
>
> Kopanski: Yes, yes –
>
> Trustee: Alright.
>
> Kopanski: – we are.
>
> Trustee: And you make the statement, highlighted that I made a financial investment on real estate totaling 177,000. I just want to clarify, you did not actually purchase any interest in real estate, correct?
>
> Kopanski: Well, that was the intention, but it fell through.
>
> . . .
>
> Trustee: Now, I'm going to show you the business account statement –
>
> Kopanski: Okay.
>
> Trustee: – but there's a deposit into the Osiris business account of roughly 174 or 175,000. So my question to you is – and we'll go through your bank statements –
>
> Kopanski: Yes, sir.
>
> Trustee: – in general –
>
> Kopanski: No problem.
>
> Trustee: – that's only a portion of the 250,000. Where did the rest of the 250,000 go?
>
> Kopanski: To various banks.
>
> Trustee: "Various banks"?

25-01080-skk    Doc 85    FILED 05/12/26    ENTERED 05/13/26 08:54:18    Page 11 of 44

Kopanski: Yes, sir. I don't have the detailed analysis of it, that's why I provided the bank statements –

Trustee: All right.

Kopanski: – to show you.

Trustee: Did you put all of that money in your bank account?

Kopanski: As you can see it was put to my personal, and then, you know, taken out for the investment and then put into my business account when the transaction failed.

. . .

Trustee: You testified about a man named Douglas Kenyon in the prior meeting –

Kopanski: Yes, sir.

Trustee: – and you had seemed to indicate he received some of the money; is that correct?

Kopanski: No, sir. He was helping with the transaction, but the transaction failed.

Trustee: He was helping with the real estate transaction?

Kopanski: Yes, sir, but it failed.

Trustee: Did he hold any of the money?

Kopanski: No, the money was put into my business account, as you see with the statement.

. . .

Trustee: – and then August 26th of 2024 is the 174,000. So just so I'm clear, the 174,000 is all proceeds of the personal injury claim, correct?

Kopanski: Yes, sir.

Trustee: Why did you deposit it into [the Business] account?

Kopanski: That's just where I put it. There was no reason.

Trustee: Is there any specific reason?

Kopanski: No, sir.

Trustee: Did you have a dispute with your law firm at a point – at the point in time when you deposited the 174,000 into the [Business] account?

Kopanski: No, sir. The reason why I actually –

Trustee: We'll let me go back, let me go back.

Kopanski: Oh, sure, no problem.

12

25-01080-skk   Doc 85   FILED 05/12/26   ENTERED 05/13/26 08:54:18   Page 12 of 44

Trustee: So you're certain there was no – there was no pending dispute with your prior law firm who handled the personal injury case at the time you deposited the 174,000 into the [Business] account?

Kopanski: I was – How would you say? No, there wasn't any malicious intent if that's what you're asking, no –

Trustee: That's not my question, my question was, at that point in time, in September [sic] '24, did you have a dispute with your prior law firm over their fee?

Kopanski: There was a dispute –

Trustee: Okay.

Kopanski: – months and months prior to –

Trustee: Okay. That answers my question. . . .

The Trustee and Counsel for Rumizen asked Kopanski questions related to specific withdrawals and transactions with the Business Account.

Trustee: [T]he $8,000 withdrawal on October 9th of 2024, do you remember where that money went?

Kopanski: Yes, sir.

Trustee: Go ahead.

Kopanski: Yes, sir. I went to Washington D.C.

Trustee: And for what purpose did you go to Washington, D.C.?

Kopanski: It was for business slash, you know, vacation.

Trustee: And what business was it for?

Kopanski: Well, I'm trying to get investors into my company, so I went to Washington D.C. to seek them.

Trustee: Okay. Same with the $5,000 withdrawals?

Kopanski: Yes, absolutely. Yes, sir.

Trustee: The next highlighted item [on the Business Account bank statement] is Hotel Washington. That's your hotel where you stayed in DC, the 4,500?

Kopanski: Yes, sir. We stayed at the same suite that Barack Obama stayed in.

. . .

13

25-01080-skk    Doc 85    FILED 05/12/26    ENTERED 05/13/26 08:54:18    Page 13 of 44

Counsel: With regards to the trip to Washington D.C. you said it was a work trip/vacation. What was the work purpose? What were you trying to do in Washington?

Kopanski: I was trying to get investors for Osiris Plastics.

Counsel: And who did you meet with? Did you meet with any potential investors?

Kopanski: I couldn't secure any time with anybody, so – but I did try.

Counsel: You testified that you withdrew at least $10,000 in anticipation of your trip. What was done with those funds when you went to Washington D.C.?

Kopanski: Yes, I spent it on food, you know, other various activities in Washington D.C. –

Counsel: Vacation related?

Kopanski: – and had a very good time. Yes, sir. Yes. That was all vacation related.

Counsel: [H]ow long were you in Washington D.C. during that period?

Kopanski: [A]bout four or five days.

ECF No. 51, Ex. Q, 3:6-17; 3:25-4:23; 5:3-14; 15:15-16:18; 17:4-17; 18:3-7; 31:14-32:10.

<u>The September 22, 2025 Meeting of Creditors</u>

The September 15 Meeting of Creditors was adjourned and continued to September 22, 2025 (the "September 22 Meeting of Creditors"). Counsel for Rumizen asked Kopanski questions related to the Settlement Amount and her prior State Court testimony.

Counsel: [Y]ou and I met at court back in May. Do you recall that?

Kopanski: Yes, sir, I do.

Counsel: Okay. And you recall testifying under oath that you indicated that all the deposited funds had been spent, paid to family members and friends and for your mother's funeral, because they had lent you money to live on during the period of time you were unemployed. Do you recall that testimony?

Kopanski: Yes, sir.

Counsel: Okay. But that seems to be different than the testimony that you gave by – when you were asked by the Trustee what you did with the money.

Kopanski: Yes, sir.

14

25-01080-skk    Doc 85    FILED 05/12/26    ENTERED 05/13/26 08:54:18    Page 14 of 44

Counsel: And you remember I wrote your attorney a letter, and I asked for the names and addresses of the people that you had borrowed the money from. You recall that?

Kopanski: No, sir, I don't.

Counsel: Okay. But you do remember testifying immediately before bankruptcy that the $150,000 was paid to family members and friends and for your mother's funeral; you do recall that?

Kopanski: Yes, sir. I didn't know the logistics of it, that's why all the bank statements have been provided.

Counsel: No, the bank statements, from what I recall, show deposits of money in lump sum amounts, but it doesn't show what you did with the monies, and according to your testimony at bankruptcy – at the [State Court] immediately before bankruptcy, you said you paid the money to family and friends and I asked for their names and proof that they had lent you money.

Kopanski: Yeah. Most of that was for my mother's funeral, so.

Counsel: Most of the 250 was for your mother's funeral?

Kopanski: No, sir. All of the bank statements have been provided.

Counsel: Okay.

Kopanski: Yes, sir.

Counsel: So the lump sum amount of money you withdrew were given to family members and friends, is that what you're testifying to?

Kopanski: No, I'm testifying that the money was, you know, spent on various things, you know, like personal items and things like that, but, yes, all of the information is available on the statements, so it's all itemized.

ECF No. 51, Ex. O, 8:12-10:15.

The Adversary Proceeding

On October 9, 2025, Rumizen filed this action to determine dischargeability and/or for denial of a discharge. ECF No. 1. Therein, Rumizen asserts that Kopanski should be denied (i) a discharge of the debt owed to it pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), or (ii) discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2). *Id.*

15

On November 7, 2025, Kopanski filed a Motion to Dismiss (ECF No. 4), which the Court denied on December 12, 2025 (ECF No. 8).[5]

On March 20, 2026, Rumizen filed its Motion for Summary Judgment. ECF No. 51. On March 23, 2026, Kopanski filed her Answer to Complaint. ECF No. 55. Kopanski did not file a response to the Motion for Summary Judgment.

## LAW AND ANALYSIS

### I.      Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' dispute exists only where 'evidence is such that a reasonable [finder of fact] could return a [judgment] for the nonmoving party.'" *Papa v. Bolera* (*In re Bolera*), 564 B.R. 569, 577 (Bankr. S.D. Ohio 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). A fact is material if it might affect the outcome of the suit under substantive law. *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir. 1992) (citing *Anderson*, 477 U.S. at 248).

"To prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim." *Bolera*, 564 B.R. at 577 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[5] On January 12, 2025, Kopanski filed a Motion for Leave to Amend Motion to Dismiss (ECF No. 10) and an Amended Motion to Dismiss (ECF No. 11). The Court denied both the Motion for Leave and Amended Motion to Dismiss on March 12, 2026 (ECF Nos. 41, 42).

331 (1986)).  "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The Court must construe the evidence and draw all reasonable inferences in favor of the non-movant.  *See Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024).

Civil Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," including documents, affidavits, or declarations.  Fed. R. Civ. P. 56(c)(1).  The Court "may consider only the materials cited, or it may consider, in its discretion, uncited materials that are nonetheless part of the record."  *Trinity High Sch., Inc. v. Sanderfer (In re Sanderfer)*, No. 23-8023, 2024 U.S. App. LEXIS 12632, at *11 (6th Cir. May 24, 2024) (citing Fed. R. Civ. P. 56(c)(3)).

Under Civil Rule 56(g), the Court may determine that certain material facts are uncontested and establish those facts as undisputed for the purpose of trial.  *Montoya v. Sasso (In re Sasso)*, 550 B.R. 550, 553 (Bankr. D.N.M. 2016).  Civil Rule 56(g) provides:

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief— that is not genuinely in dispute and treating the fact as established in the case.

Further, the 2010 Amendment Advisory Committee Notes provide:

> Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment.  It becomes relevant only after the court has applied the summary-judgment standard . . . to each claim, defense, or part of a claim or defense, identified by the motion.  Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute.

Fed. R. Civ. P. advisory committee's note to 2010 amendment.   "The purpose of [the rule] is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary

judgment and to streamline the litigation process by narrowing the triable issues." *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014) (quoting *Guilani v. Bak (In re Bak)*, No. 10-13045, 2013 Bankr. LEXIS 713, at *9 (Bankr. D. Conn. 2013)).

This opinion includes the Court's findings of undisputed facts and conclusions of law, as well as the Court's determinations that certain facts are not subject to a genuine dispute and are established in the case pursuant to Civil Rule 56(g).

## II. Nondischargeability in Bankruptcy

The discharge provided by Section 727 "is at the heart of the Bankruptcy Code's fresh start provisions." *Rafoth v. Chimento (In re Chimento)*, 43 B.R. 401, 403 (Bankr. N.D. Ohio 1984) (citation omitted). "It embodies the principle that the bankruptcy laws afford to the honest debtor a fresh start in life free from the onus of oppressive debt." *Id.* To effectuate this principle, a Chapter 7 debtor will ordinarily receive a discharge unless a specific exception applies. *See e.g.*, *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor [. . .] is not entitled to the fresh start provided by the Bankruptcy Code.").

Rumizen seeks a determination that the debt owed to it by Kopanski in connection with the State Court Judgment is nondischargeable under Sections 523(a)(2)(A) and (a)(6). Those portions of Section 523 provide that:

> (a)  A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
>  (2) for money, property, [or] services. . . to the extent obtained by . . .
>
>    (A) false pretenses, a false representation, or actual fraud . . . ;
>
>  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

18

11 U.S.C. § 523(a).

Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Livingston v. Transnation Title Ins. Co, (In re Livingston)*, 372 F. App'x 613, 618 (6th Cir. 2010). "The objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of the type excepted from discharge." *Brann v. Oxford (In re Oxford)*, 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010) (citing *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998)); *see also Grogan v. Garner*, 498 U.S. 279, 291 (1991).

**III.     11 U.S.C. § 523(a)(2)(A): False Pretenses, False Representations, or Actual Fraud**

To establish a debt as nondischargeable under Section 523(a)(2)(A), a plaintiff must prove each of the following elements by a preponderance of the evidence: "(1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, *at the time*, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss." *Rembert*, 141 F.3d at 280-81 (emphasis added).

"False representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland (In re Wentland)*, 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009) (quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson (In re Thompson)*, 458 B.R. 409, 421 (Bankr. S.D. Ohio

19

2011) (quoting *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004, 1009 (N.D.

Ill. 1991)); *see also Wentland*, 410 B.R. at 594. To form the basis of a false representation or

false pretense, a debtor-promisor's representation (such as a lack of intent to perform under the

contract) must have existed at the time the contract was executed. *See Siebanoller v. Rahrig (In

re Rahrig)*, 373 B.R. 829, 834 (Bankr. N.D. Ohio 2007).

A cause of action for "actual fraud," "[does] not require a misrepresentation from a

debtor to a creditor," *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 361 (2016), rather "actual

fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment

and hindrance." *Id*. at 362.

A debtor's intent to deceive a creditor is measured by a subjective standard and must be

ascertained through review of the totality of the circumstances. *Rembert*, 141 F.3d at 281-82; *see

also Oxford*, 440 B.R. at 777.[6]

Rumizen claims Kopanski's apparent failure to "seek new counsel nor negotiate addition

or more favorable terms after termination" of the Agreement reflects a "calculated effort to sever

the relationship in order to avoid paying [Rumizen] the contractually agreed-upon fees.[7] ECF

No. 51, p. 14. Rumizen asserts that Kopanski depositing the settlement amount into her Personal

Account "a mere thirty-nine days from the date she terminated [Rumizen] as counsel" serves as

---

[6] Although the State Court determined Kopanski was liable for breach of contract, "[a] broken promise alone will not establish the existence of any intent to deceive." *Risk v. Hunter (In re Hunter)*, 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015).

[7] Rumizen states that after terminating the Agreement, Kopanski later accepted the "same settlement" offer as was received when represented by Rumizen. Rumizen provides Rachel Bagnolo, Esq.'s Affidavit as evidence that while it represented Kopanski, "the mediator indicated that defense was prepared to offer $250,000." ECF No. 51, p. 14. Ms. Bagnolo's affidavit states: "The last offer made by Progressive Insurance . . . was $190,000" and that "[a]fter mediation Progressive Insurance settled this case directly with [Kopanski] in the amount of $250,000." ECF No. 51, Ex. D. Making all reasonable inferences in favor of the non-movant, the Court can make no finding related to this fact, nor is it necessary to do so as this Court must defer to the State Court Judgment for the amount of the debt.

evidence of a material misrepresentation.  *Id.*, p. 14.  To Rumizen, that "brief interval between the termination and the receipt of settlement funds further supports the conclusion that [Kopanski] acted with the intent to deceive [Rumizen]."  *Id.*, p. 15.  Moreover, Rumizen claims that Kopanski later accepted the "*same settlement offer* shortly after terminating [Rumizen's] services."  *Id.*  (emphasis added).

### A.    False Pretenses

Rumizen's arguments do not satisfy the legal standard for false pretenses.  "In § 523(a)(2)(A) cases, the Court must first inquire as to the Defendant's intent *at the time the representation was made*."  *Rizzo v. Mindes (In re Mindes)*, 412 B.R. 8, 14 (Bankr. D.N.H. 2009) (emphasis added).  Rumizen does not identify conduct in the record sufficient for this Court to find an implied misrepresentation or conduct that was intended to create and foster a false impression at the time she obtained Rumizen's services.  The contractual relationship between Rumizen and Kopanski was established when they entered into the Agreement, and that is also when Kopanski's promise to pay Rumizen occurred, even if Rumizen withdrew their representation or she terminated Rumizen as her counsel.  The debt was then contingent and unliquidated.  When Kopanski terminated Rumizen, the debt was no longer contingent or unliquidated, although it may have been disputed.  Rumizen's arguments focus on nonpayment and the bankruptcy filing itself – later events which are not sufficient to show false pretenses at the time that Kopanski obtained Rumizen's services.  Rumizen fails to meet its burden of proof.

### B.    False Representation

Rumizen's false representation theory is not persuasive because it rests on Kopanski's subsequent failure to pay the Settlement Amount rather than on any false statement which induced Rumizen to enter into the Agreement.  "The element distinguishing a false

21

representation from a false pretense is an explicit, definable statement by the debtor that results in a misrepresentation." *In re Catanzarite*, No. 23-13151, 2025 Bankr. LEXIS 1489, 2025 WL 1727493, at *7 (Bankr. N.D. Ohio June 18, 2025) (quoting *Argento v. Cahill (In re Cahill)*, No. 15-08298, 2017 WL 713565, at *6 (Bankr. E.D.N.Y. Feb. 22, 2017)).

Based on the record presently before the Court, there is no evidence that Kopanski made any explicit, definable statements when entering into the Agreement that resulted in a misrepresentation. Rumizen does not identify circumstances from which an inference could be drawn showing Kopanski lacked an intent to perform when the Agreement was executed. The relevant inquiry is whether a knowingly false representation, an explicit, definable statement, caused Rumizen to part with money, property, services, or credit, not whether Kopanski later failed to perform an admitted obligation. Rumizen does not provide evidence sufficient to establish false representation.

### C. Actual Fraud

Rumizen asks the Court to find that Kopanski's later nonperformance and failure to remit payment establishes actual fraud.

Fraud under Section 523(a)(2)(A) has been broadly defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Fuller v. Meehan (In re Fuller)*, No. 24-15090, 2026 Bankr. LEXIS 931, 2026 WL 970426, at *6 (Bankr. N.D. Ohio Apr. 9, 2026) (quoting *In re Vitanovich*, 259 B.R. at 877). Rumizen fails to identify any fraudulent scheme which induced Rumizen to offer its services to Kopanski. Rumizen presents no evidence that, at the time the parties entered into the Agreement, Kopanski knew she made material representations which were false or that she made material representations "with gross recklessness as to [their] truth." *Rembert*, 141 F.3d at 280-81. There

22

is also not sufficient circumstantial evidence to conclude Kopanski intended to deceive Rumizen when they entered into the Agreement.

At the summary judgment stage this Court is obligated to "construe the evidence and draw all reasonable inferences in favor of the non-movant." *Doe*, 111 F.4th at 715. The Court cannot determine that the debt Kopanski owes to Rumizen is nondischargeable under Section 523(a)(2)(A) because the facts and evidence do not support such finding. Summary judgment is denied as to Section 523(a)(2)(A), and the Court makes no findings pursuant to Civil Rule 56(g).

## IV.     11 U.S.C. § 523(a)(6): Willful and Malicious Injury

To be non-dischargeable under Section 523(a)(6), the debt must be from a "willful and malicious" injury. *Markowitz v. Campbell, (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-02 (Bankr. N.D. Ohio 2001). "A debtor willfully and maliciously injures a creditor if, acting without just cause or excuse, [s]he knows or is substantially certain that h[er] actions will cause injury." *Doe v. Boland (In re Boland)*, 946 F.3d 335, 338 (6th Cir. 2020). Assessing whether an injury is "willful and malicious" under Section 523(a)(6) "is a two-pronged inquiry," *MarketGraphics Research Grp. Inc. v. Berge (In re Berge)*, 953 F.3d 907, 9016 (6th Cir. 2020), and the "willful and malicious standard is a stringent one. . . ." *Steier v. Best (In re Best)*, 109 F. App'x 1, 4 (6th Cir. 2004).

Addressing the willful requirement of Section 523(a)(6), the Supreme Court determined that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts,' holding "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

23

A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *In re Markowitz*, 190 F.3d at 464).

"'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citation omitted). It is the "knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

Section 523(a)(6) also requires "injury by the debtor." The injury must be by the debtor and that, absent certain circumstances, the conduct of others cannot be imputed to the debtor. *See Huffman v. Holden (In re Hughley)*, No. 17-41946, 2019 Bankr. LEXIS 1767, 2019 WL 2402852, at *5 (Bankr. N.D. Ohio June 5, 2019).

Under *Geiger*, damages for a breach of contract can be nondischargeable under Section 523(a)(6). *Salem Bend Condominium Assoc. v. Bullock-Williams (In re Bullock-Williams)*, 220 B.R. 345 (B.A.P. 6th Cir. 1998). A plaintiff must show more than just a "knowing breach of contract" and must prove that the defendant "intended to cause harm by" breaching the contract. *Id*. at 347. An intent to harm exists when the defendant "desires to cause consequences of his act, or . . . believes that the consequences of his action are substantially certain to result from it." *Markowitz*, 190 F.3d at 464 (citation omitted).

Where a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless all reasonable inferences defeat the claims of the opposing party. *Sicherman*

24

*v. Rivera (In re Rivera)*, 338 B.R. 318, 327 (Bankr. N.D. Ohio 2006) (citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002) ("When the defendants' intent is at issue, summary judgment is particularly inappropriate.")).  In other words, "when facts . . . are capable of supporting conflicting yet plausible inferences . . . then the choice between those inferences is not for the court on summary judgment."  *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir. 1994).

Here, Rumizen claims that "[a]t the time [the Charging Lien] notice was sent on July 2, 2024, [Kopanski] still had sufficient funds to cover" the amounts owed to it.  ECF No. 51, p. 16.  Further, when the State Court Judgment was entered on November 12, 2024, Rumizen claims Kopanski "still had sufficient funds to cover the $74,035.98" based on her November 30, 2024 Business Account bank statement.  ECF No. 51, p. 16-17; Ex. L.  Rumizen asserts that Kopanski "willfully and maliciously spent down or concealed these funds, deliberately depriving [Rumizen] of the compensation to which they were legally obligated."  ECF No. 51, p. 17.

The Court finds that Kopanski willfully caused injury to Rumizen because she consciously spent down funds, withdrawing large sums of cash after the Collection Case was filed.  Kopanski knew that by spending the Settlement Amount, she would have no means to pay Rumizen as she was, and remains, otherwise unemployed.  Kopanski desired the course of her actions, admitting she had a "very good time" at a luxury hotel in Washington D.C.  Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski acted willfully.

Whether the injury was malicious is a separate analysis.  *See In re Hakli*, No. 23-13534, 2024 Bankr. LEXIS 2428, 2024 WL 4379768, at \*5 (Bankr. N.D. Ohio Oct. 1, 2024) ([T]he injury "must also be 'malicious' in order to satisfy § 523(a)(6).").  Viewing the facts in the light

most favorable for Kopanski, this Court cannot find as a matter of law that Kopanski's spending constitutes a malicious injury that makes her debt to Rumizen non-dischargeable under Section 523(a)(6). Rumizen argues that Kopanski's spending reflects an intent to cause injury. This, on its own, is not sufficient to establish that Kopanski acted "deliberately" or "intentionally" or with the particular state of mind required under Section 523(a)(6). Summary judgment is denied as to Section 523(a)(6) because the Court cannot find malice, and the Court makes no findings as to malice pursuant to Civil Rule 56(g).

## V. Exceptions to Discharge under 11 U.S.C. § 727

The discharge provided by Section 727 "is a privilege and not a right." *Gandy v. Schuchardt (In re Gandy)*, 645 F. App'x 348, 352 (6th Cir. 2016). A debtor who has "engaged in certain types of misconduct is not entitled to a discharge. *Id*. (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)). To qualify for discharge, a debtor has an affirmative duty to disclose all assets to the bankruptcy court. *Montedonico v. Beckham (In re Beckham)*, No. 08-8054, 2009 Bankr. LEXIS 1345, 2009 WL 1726526, at *9 (B.A.P. 6th Cir. 2009). A debtor is required to be "absolutely transparent in all matters regarding their financial affairs." *Vara v. Crawford (In re Crawford)*, 673 B.R. 793, 803 (Bankr. N.D. Ohio 2025) (quoting *Peters v. Michael (In re Michael)*, 433 B.R. 214, 220 (Bankr. N.D. Ohio 2010)). Here, Rumizen asks the Court to deny Kopanski's discharge under Sections 727(a)(4)(A) and (a)(2) because Rumizen asserts Kopanski knowingly and fraudulently made false statements and concealed property of the estate with the intent to hinder, delay, or defraud Rumizen.

## VI. 11 U.S.C. § 727(a)(4)(A)

"A prerequisite to the privilege of obtaining a discharge in bankruptcy is complete financial disclosure." *In re Keeney*, 227 F.3d at 685. Section 727(a)(4)(A) prevents discharge

26

25-01080-skk    Doc 85    FILED 05/12/26    ENTERED 05/13/26 08:54:18    Page 26 of 44

when the debtor knowingly and fraudulently makes false statements under oath.  11 U.S.C.
§ 727(a)(4)(A).

The Sixth Circuit laid out five elements a court must weigh when determining

dischargeability under Section727(a)(4)(A).  *In re Keeney*, 227 F.3d at 685.  The *Keeney*

elements, that the moving party must prove by a ponderance of the evidence, are as follows:

1.      the debtor made a statement under oath;

2.      the statement was false;

3.      the debtor knew the statement was false;

4.      the debtor made the statement with fraudulent intent; and

5.      the statement related materially to the bankruptcy case.

*Id*.; *see also Vara v. Crump (In re Crump)*, 660 B.R. 819, 825 (Bankr. N.D. Ohio 2024).  The

moving party must show that all elements of Section 727(a)(4)(A) are met to establish a *prima*

*facie* case for denial of a debtor's discharge.  Once a *prima facie* case is established, the burden

shifts to "the debtor to provide a credible explanation for their actions."  *Cleveland v. Bluestone*

*(In re Bluestone)*, 102 B.R. 103, 106 (Bankr. N.D. Ohio 1989).

Rumizen argues that Kopanski knowingly and fraudulently made the following false

statements:

1.      That Kopanski owned a business, but the business never operated or owned
        assets;

2.      That Kopanski only owned or personally used one single personal checking
        account at KeyBank; and

3.      That Kopanski used $177,000 of her personal injury settlement to purchase real
        estate and that the real estate transaction was being litigated.

The Court analyzes each of these three statements with the *Keeney* elements.

27

**A.    First Statement: Kopanski Owned a Business, but the Business Never Operated or Owned Assets.**

**1.    Court Findings for *Keeney* Elements One and Two**

As to the first and second *Keeney* elements, statements made in bankruptcy schedules, the SOFA, the 341 meeting of creditors, and testimony given at Rule 2004 exams are made under oath. *See Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999). A knowingly false statement or omission made by the debtor "with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge." *Id*.

A debtor has an affirmative duty to disclose all assets to the bankruptcy court. *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 559 B.R. 692, 697 (B.A.P. 6th Cir. 2016). The Court determines that Kopanski made false statements regarding the fact that she owned a business, but the business never operated or owned assets. Kopanski did not include her business, Osiris, in her original or amended schedules and SOFA. Despite amending her schedules and SOFA, Kopanski did not admit that she owned a business until the August 18 Meeting of Creditors.

When questioned by the Trustee at the August 18 Meeting of Creditors, Kopanski testified that Osiris wasn't operating, that she never operated Osiris, and that Osiris never earned any income. Later, during the August 18 Meeting of Creditors, when questioned by counsel for Rumizen and only after multiple questions, did Kopanski admit that she caused Osiris to open the Business Account within one year of the petition date. Kopanski first testified that Osiris had a "small bank account," and then later testified she would sometimes deposit $300,000-$400,000 into the Business Account. When shown bank statements, Kopanski admitted to withdrawing $18,000 in cash on October 9 and 10, 2024 from the Business Account.

28

There is no genuine dispute as to whether Kopanski made statements under oath and whether those statements were in fact false regarding her ownership of a business and whether that business had assets. She omitted that information from her Schedules and SOFA, testified one way to the Trustee, and then offered conflicted testimony when questioned by counsel for Rumizen. Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski made statements under oath about her business and whether it operated or had assets, and that those statements were false.

### 2. Court Findings for *Keeney* Element Three

For the third *Keeney* element, knowledge may be shown by "demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *In re Hamo*, 233 B.R. at 725. The Court has already determined that Kopanski made false statements under oath. The third *Keeney* element examines whether Kopanski knew the statements were false.

Kopanski failed to provide correct and accurate information regarding her ownership of Osiris in her Schedules and SOFA. When bank statements for the Business Account were introduced, Kopanski acknowledged the truth. Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski knew the omissions in her schedules and SOFA and her contradictory testimony were false.

### 3. Genuine Issues of Material Fact Remain for *Keeney* Element Four

The fourth *Keeney* element is most difficult to prove and results in the most litigation. *In re Crump*, 660 B.R. at 826. A debtor will rarely admit to fraudulent intent, but a Court may infer such intent "based on a course of conduct." *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 248 (Bankr. N.D. Ill. 2005); *see also In re Hamo*, 233 B.R. at 724 ("A debtor's intent

29

may be inferred from circumstantial evidence or from the debtor's course of conduct.") (citations omitted).  A reckless disregard as to whether a representation is true will also satisfy the intent requirement.  *In re Keeney*, 227 F.3d at 686; *see also In re Courtney*, 351 B.R. 491, 506 (Bankr. E.D. Tenn. 2006) ("[I]ntent may be inferred from the Debtor's conduct, and a continuing pattern of omissions and/or false statements in his bankruptcy schedules exhibits reckless indifference.") (internal citations omitted).  "Courts may deduce fraudulent intent from all the facts and circumstances of a case."  *In re Keeney*, 227 F.3d at 686.

A combination of errors and omissions that "individually may not rise to the level necessary to deny discharge," may, in the aggregate, "evidence the requisite fraudulent intent." *Elite Constr. Design Mgmt. LLC v. Kerschner*, No. 2:23-CV-820, 2024 U.S. Dist. LEXIS 91800, 2024 WL 2315272, at *14 (S.D. Ohio May 22, 2024) (quoting *In re Capra*, No. 15-15907, 2016 Bankr. LEXIS 3410, 2016 WL 5106994, at *10 (Bankr. N.D. Ohio Sept. 19, 2016)).

"'Summary judgment is particularly inappropriate' when an individual's intent is at issue."  *Buckeye Ret. Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 655-56 (B.A.P. 6th Cir. 2008) (quoting *Hoover*, 307 F.3d at 467). "Even where intent is at issue, summary judgment is appropriate if all reasonable inferences defeat the claims of one side."  *In re Swegan*, 383 B.R. at 655-56 (internal citations omitted).

Here, without an assessment of Kopanski's demeanor and credibility, the Court construes the evidence in favor of the non-movant and determines that genuine issues of material fact remain that must be determined at trial regarding whether Kopanski made statements and omitted information regarding Osiris with fraudulent intent.

### 4. Court Findings for *Keeney* Element Five

For the fifth and final element, the "subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeney*, 227 F.3d at 686 (internal citation omitted); *see also In re McWhorter*, 557 B.R. 543, 557 (Bankr. E.D. Ky. 2016) ("Materiality is a broad standard under Sixth Circuit precedent[.]").

An intentional failure to disclose an asset or property transfer, "even if the asset is ultimately deemed worthless, can support a denial of discharge." *In re Bruce*, No. 15-13536, 2019 WL 11639533, at *8 (Bankr. S.D. Ohio Sept. 16, 2019). The reason for this is that "the trustee and creditors should be entitled to judge for themselves what assets hold value and benefit to the estate. Indeed, the completeness and veracity of the debtor's statements are essential to the successful administration of the Bankruptcy Code." *Id.*

The threshold of materiality is "relatively low." *Kerschner*, 2024 WL 2315272 at *13. As to the fifth *Keeney* element of materiality, the Court determines that Kopanski's omission of her business on her schedules and SOFA is material to her bankruptcy case. Her omission and her contradictory testimony prevented the Trustee from thoroughly investigating the matter. The materiality element is deemed established for trial under Civil Rule 56(g).

### 5. Court Findings Summary for First Statement: Kopanski Owned a Business, but the Business Never Operated or Owned Assets.

*Keeney* elements 1, 2, 3, and 5 are not subject to a genuine dispute, and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain as to *Keeney* element 4 ("the debtor made the statement with fraudulent intent"). Summary judgment is denied as to this statement.

31

**B.      Second Statement: Kopanski Only Owned or Personally Used One Single Personal Checking Account at KeyBank.**

**1.      Court Findings for *Keeney* Elements One and Two**

As to the first and second *Keeney* elements, statements made in bankruptcy schedules, the SOFA, the 341 meeting of creditors, and testimony given at Rule 2004 exams are made under oath. *See, e.g.*, *In re Hamo*, 233 B.R. at 725. A knowingly false statement or omission made by the Debtor "with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge." *Id*.

The Court determines that Kopanski made false statements regarding the fact that she only owned or personally used one single personal checking account at KeyBank.

Despite amending her schedules and SOFA, Kopanski did not disclose that a second account, the Business Account, existed, and that she used it. When questioned by the Trustee at the August 18 Meeting of Creditors, Kopanski testified, in response to three separate questions, that her Personal Account was the only account she had or used.

Later, during the August 18 Meeting of Creditors, when questioned by counsel for Rumizen, Kopanski denied that Osiris had a bank account. Only after multiple questions, did Kopanski acknowledge that Osiris had a bank account and that she used it.

There is no genuine dispute that Kopanski made statements under oath and that those statements were false regarding the fact that she only owned or personally used her Personal Account. At the August 18 Meeting of Creditors, she testified one way when questioned by the Trustee and then offered different testimony when questioned by counsel for Rumizen. Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g), the fact that Kopanski made statements under oath about only owning or personally using her Personal Account and that those statements were false.

32

### 2. Court Findings for *Keeney* Element Three

For the third *Keeney* element, knowledge may be shown by "demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *In re Hamo*, 233 B.R. at 725. The Court has already determined that Kopanski made false statements under oath. The third *Keeney* element examines whether the debtor knew the statement was false.

"Knowledge may be shown by demonstrating that the debtor knew the truth but nonetheless failed to give the information or gave contradictory information." *Id.* Kopanski failed to provide correct, accurate information regarding bank account information in her Schedules and SOFA, and she later provided contradictory testimony regarding an account she used in addition to her Personal Account. Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski knew the omissions in her Schedules and SOFA and her contradictory testimony was false.

### 3. Genuine Issues of Material Fact Remain for *Keeney* Element Four

The fourth *Keeney* element is most difficult to prove and results in the most litigation. *In re Crump*, 660 B.R. at 826. A debtor will rarely admit to fraudulent intent, but a Court may infer such intent "based on a course of conduct." *In re Self*, 325 B.R. at 248; *see also In re Hamo*, 233 B.R. at 724 ("A debtor's intent may be inferred from circumstantial evidence or from the debtor's course of conduct.") (citations omitted). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *In re Keeney*, 227 F.3d at 686; *see also In re Courtney*, 351 B.R. at 506 ("Reckless disregard or indifference for the truth also demonstrates fraudulent intent. Likewise, intent may be inferred from the Debtor's conduct, and a continuing pattern of omissions and/or false statements in his bankruptcy schedules exhibits

33

reckless indifference.") (internal citations omitted). "Courts may deduce fraudulent intent from all the facts and circumstances of a case." *In re Keeney*, 227 F.3d at 686.

A combination of errors and omissions that "individually may not rise to the level necessary to deny discharge," may, in the aggregate, "evidence the requisite fraudulent intent." *Kerschner*, 2024 WL 2315272 at *14 (quoting *In re Capra*, 2016 WL 5106994 at *10).

"'Summary judgment is particularly inappropriate' when an individual's intent is at issue." *In re Swegan*, 383 B.R. at 655-56 (quoting *Hoover*, 307 F.3d at 467). "Even where intent is at issue, summary judgment is appropriate if all reasonable inferences defeat the claims of one side." *In re Swegan*, 383 B.R. at 655-56 (internal citations omitted).

Here, without an assessment of Kopanski's demeanor and credibility, the Court construes the evidence in favor of the non-movant and determines that genuine issues of material fact remain that must be determined at trial regarding whether Kopanski made statements and omitted information with fraudulent intent regarding bank accounts in addition to her Personal Account.

### 4. Court Findings for *Keeney* Element Five

For the fifth and final element, the "subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeney*, 227 F.3d at 686 (internal citation omitted), *see also In re McWhorter*, 557 B.R. at 557 ("Materiality is a broad standard under Sixth Circuit precedent[.]").

An intentional failure to disclose an asset or property transfer, "even if the asset is ultimately deemed worthless, can support a denial of discharge." *In re Bruce*, 2019 WL 11639533 at *8. The reason for this is that "the trustee and creditors should be entitled to judge

34

for themselves what assets hold value and benefit to the estate.  Indeed, the completeness and veracity of the debtor's statements are essential to the successful administration of the Bankruptcy Code."  *Id.*

The threshold of materiality is "relatively low."  *Kerschner*, 2024 WL 2315272 at *13. As to the fifth *Keeney* element of materiality, the Court determines that Kopanski's omissions and contradictory statements made under oath regarding the fact that her Personal Account was the only bank account she used are material to her bankruptcy case.  The materiality element is deemed established for trial under Civil Rule 56(g).

### 5. Court Findings Summary for Second Statement: Kopanski Only Owned or Personally Used One Single Personal Checking Account at KeyBank.

*Keeney* elements 1, 2, 3, and 5 are not subject to a genuine dispute, and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain as to *Keeney* element 4 ("the debtor made the statement with fraudulent intent").  Summary judgment is denied as to this statement.

### C. Third Statement: Kopanski Used $177,000 of her Personal Injury Settlement To Purchase Real Estate and that the Real Estate Transaction Was Being Litigated (the "Real Estate Transaction").

### 1. Court Findings for *Keeney* Elements One and Two

As to the first and second *Keeney* elements, statements made in bankruptcy schedules, the SOFA, the 341 meeting of creditors, and testimony given at Rule 2004 exams are made under oath.  *See, e.g.*, *In re Hamo*, 233 B.R. at 725.  A knowingly false statement or omission made by the Debtor "with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge."  *Id*.

The Court determines that Debtor made false statements regarding the Real Estate Transaction. At the August 18 Meeting of Creditors, Kopanski testified that she transferred $177,000 of the Settlement Amount from her Personal Account to Douglas Kenyon for the purchase of real estate, that those funds were being held by the sellers of the real estate, and that the real estate transaction was in litigation. Kopanski then testified that the $174,000 deposit in her Business Account was from investors. At the September 15 Meeting of Creditors, Kopanski testified that the $174,000 deposit into the Business Account was proceeds of the Settlement Amount, and that Douglas Kenyon transferred the funds into the Business Account when the real estate transaction failed.

There is no genuine dispute that Kopanski made statements under oath and that those statements were about the Real Estate Transaction were in fact false. Therefore, for purposes of trial, the Court deems these facts established under Civil Rule 56(g).

### 2. Court Findings for *Keeney* Element Three

For the third *Keeney* element, knowledge may be shown by "demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *In re Hamo*, 233 B.R. at 725. The Court has already determined that Kopanski made false statements under oath. The third *Keeney* element examines whether the debtor knew the statement was false.

"Knowledge may be shown by demonstrating that the debtor knew the truth but nonetheless failed to give the information or gave contradictory information." *In re Hamo*, 233 B.R. at 725. Kopanski failed to provide the correct, accurate information regarding the Real Estate Transaction and how she spent the Settlement Amount, providing contradictory testimony about who was holding $177,00 of the Settlement Amount. Therefore, for purposes of trial, the

36

Court deems as established under Civil Rule 56(g) the fact that Kopanski knew her statements about the Real Estate Transaction and who was holding $177,000 were false.

The Court is particularly troubled by the testimony Kopanski gave at the September 22 Meeting of Creditors, when she recalled, under oath, that her prior State Court testimony was different than her testimony to the Trustee at both the August 18 and the September 15 Meeting of Creditors. Kopanski agreed that she testified in State Court that she spent the Settlement Amount to pay for her mother's funeral and to repay family and friends for loans they gave her for her living expenses, and she agreed that her testimony at the first two Meeting of Creditors was different. There is no question that Kopanski knew she was making false statements, as she herself admitted.

Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski knew her statements about the Real Estate Transaction and who was holding $177,000 were false.

### 3. Genuine Issues of Material Fact Remain for *Keeney* Element Four

The fourth *Keeney* element is most difficult to prove and results in the most litigation. *In re Crump*, 660 B.R. at 826. A debtor will rarely admit to fraudulent intent, but a Court may infer such intent "based on a course of conduct." *In re Self*, 325 B.R. at 248; *see also In re Hamo*, 233 B.R. at 724 ("A debtor's intent may be inferred from circumstantial evidence or from the debtor's course of conduct.") (citations omitted). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *In re Keeney*, 227 F.3d at 686; *see also In re Courtney*, 351 B.R. at 506 ("Reckless disregard or indifference for the truth also demonstrates fraudulent intent. Likewise, intent may be inferred from the Debtor's conduct, and a continuing pattern of omissions and/or false statements in his bankruptcy schedules exhibits

25-01080-skk    Doc 85    FILED 05/12/26    ENTERED 05/13/26 08:54:18    Page 37 of 44

reckless indifference.") (internal citations omitted). "Courts may deduce fraudulent intent from all the facts and circumstances of a case." *In re Keeney*, 227 F.3d at 686.

A combination of errors and omissions that "individually may not rise to the level necessary to deny discharge," may, in the aggregate, "evidence the requisite fraudulent intent." *Kerschner*, 2024 WL 2315272 at *14 (quoting *In re Capra*, 2016 WL 5106994 at *10).

"'Summary judgment is particularly inappropriate' when an individual's intent is at issue." *In re Swegan*, 383 B.R. at 655-56 (quoting *Hoover*, 307 F.3d at 467). "Even where intent is at issue, summary judgment is appropriate if all reasonable inferences defeat the claims of one side." *In re Swegan*, 383 B.R. at 655-56 (internal citations omitted).

The Court notes that it was after several rounds of questioning at the September 15 Meeting of Creditors that Kopanski admitted a portion of the Settlement Amount was deposited into the Business Account. The Court is aware of Kopanski's testimony that, within two months of Douglas Kenyon's transfer of $174,000 into the Business Account, she withdrew $18,000 in cash from the Business Account and spent over $1,000 per night to stay in a luxury hotel in Washington, D.C. The Court finds deeply concerning Kopanski's testimony that her expenses in Washington, D.C. were all vacation related and that she had a "very good time." These circumstances could show reckless disregard or indifference for the truth.

Without an assessment of Kopanski's demeanor and credibility, however, the Court construes the evidence in favor of the non-movant and determines that genuine issues of material fact remain that must be determined at trial regarding whether Kopanski made false statements and omitted information with fraudulent intent about the Real Estate Transaction and who was holding $177,000.

### 4.     Court Findings for *Keeney* Element Five

For the fifth and final element, the "subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeney*, 227 F.3d at 686 (internal citation omitted), *see also In re McWhorter*, 557 B.R. at 557 ("Materiality is a broad standard under Sixth Circuit precedent[.]").

An intentional failure to disclose an asset or property transfer, "even if the asset is ultimately deemed worthless, can support a denial of discharge." *In re Bruce*, 2019 WL 11639533 at *8. The reason for this is that "the trustee and creditors should be entitled to judge for themselves what assets hold value and benefit to the estate. Indeed, the completeness and veracity of the debtor's statements are essential to the successful administration of the Bankruptcy Code." *Id.*

The threshold of materiality is "relatively low." *Kerschner*, 2024 WL 2315272 at *13. As to the fifth *Keeney* element of materiality, the Court determines that Kopanski's omissions and contradictory statements made under oath regarding the Real Estate Transaction and who was holding $177,000 are material to her bankruptcy case. Her contradictory testimony prevented the Trustee from thoroughly investigating the matter. The materiality element is deemed established for trial under Civil Rule 56(g).

### 5.     Court Findings for Third Statement: Kopanski Used $177,000 of her Personal Injury Settlement to Purchase Real Estate and that the Real Estate Transaction Was Being Litigated.

*Keeney* elements 1, 2, 3, and 5 are not subject to a genuine dispute, and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain as

to *Keeney* element 4 ("the debtor made the statement with fraudulent intent").  Summary judgment is denied as to this statement.

**VII.   11 U.S.C. § 727(a)(2)(A)**

A debtor has a duty under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure not to conceal property of the estate after filing a petition.  *See, e.g.*, Fed. R. Bankr. P. 4002; *In re Crawford*, 673 B.R. at 803 (explaining debtor's requirement to be transparent in all matters regarding financial affairs).  Section 727(a) provides that the court shall deny a debtor a discharge if: "(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . . concealed, or has permitted to be . . . concealed – (A) property of the debtor, within one year before the date of the filing of the petition. . . ."  11 U.S.C. § 727(a)(2)(A).

The Sixth Circuit created a two-part test for Section 727(a)(2)(A), which "encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.'" *Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

**A.      Concealment**

Debtors are required to be honest and accurate in their dealings with the court, the trustee, and creditors.  *See e.g.*, *Buckstop Lure Co. v. Trost (In re Trost)*, 164 B.R. 740, 749 (Bankr. W.D. Mich. 1994) ("A debtor is required to be fair and honest with the Court and make full and accurate disclosure in all of the documents filed with the Court.").  A "concealment as used in § 727(a)(2)(A) includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *In re Swegan*, 383 B.R. at 653 (citing

40

*United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992)).  "Under this standard, concealment occurs when a debtor fails to adequately and truthfully answer a question at a state-court debtor's examination, at a 341 meeting of creditors, within a bankruptcy petition, or in other similar situations."  *McDermott v. Recupero (In re Recupero)*, No. 13-6089, 2014 Bankr. LEXIS 2115, 2014 WL 1884331, at *7 (Bankr. N.D. Ohio May 12, 2014) (citing *In re Swegan*, 383 B.R. at 655).

Rumizen argues that Kopanski showed "a pattern of false testimony in an effort to conceal information which should have been disclosed on the bankruptcy petition and schedules."  ECF No. 51.  The Court agrees.

First, Kopanski concealed information related to Osiris.  She did not include Osiris in her original or amended schedules and SOFA.  At the August 18 Meeting of Creditors, Kopanski disclosed that she owned a business, but she made false statements regarding the fact that it had "a small bank account."  Kopanski later testified that the account sometimes had "$300,000-$400,000" on deposit.

Second, Kopanski concealed information related to the Real Estate Transaction and the status of $177,000.  At the August 18 Meeting of Creditors, Kopanski testified that she transferred $177,000 from her Personal Account to Douglas Kenyon for the purchase of real estate, that those funds were being held by the sellers of the real estate, and that the Real Estate Transaction was in litigation.  She also testified that a $174,000 deposit into the Business Account was money from investors.  At the September 15 Meeting of Creditors, Kopanski testified that a deposit in the amount of $174,000 into the Business Account was proceeds of the Settlement Amount, and that Douglas Kenyon transferred the funds into the Business Account when the Real Estate Transaction failed.

Third, there is even a pattern to Kopanski's false statements themselves. Kopanski omits material information from her Schedules and SOFA (her business, bank accounts, and transfers of the Settlement Amount). When initially specifically questioned about material information, she denies having a business or that her business has a bank account, and then upon further questioning, Kopanski conditions her denial (Osiris existed but never operated, Osiris had a small bank account). It is when she is asked repeatedly, pointedly, and in some instances only when she is directly confronted with bank statements, that Kopanski admits the truth of the matter she has been asked.

There is no genuine issue of material fact that Kopanski failed to provide correct, accurate information regarding Osiris, the Business Account, and the Real Estate Transaction. Therefore, for purposes of trial, the Court deems as established under Civil Rule 56(g) the fact that Kopanski concealed information and property.

**B.      Subjective Intent to Hinder, Delay or Defraud**

"Intent is generally a question of fact." *In re Worrell*, 2013 Bankr. LEXIS 3628 at \*6. The fraudulent intent required under Section 727(a) "must be actual, as distinguished from constructive, intent." *Hunters v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998) (quoting *Bank of Pennsylvania v. Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)). Actual intent may be established by circumstantial evidence or inferred from the debtor's conduct. *Pavy v. Chastant*, 873 F.2d 89, 91 (5th Cir.1989); *American General Finance, Inc. v. Burnside*, 209 B.R. 867, 870 (Bankr. N.D. Ohio 1997). "Just one wrongful act may be sufficient to show actual intent under § 727(a)(2). However, a continuing pattern of wrongful behavior is a stronger indication of actual intent." *In re Sowers*, 229 B.R. at 157. "[A]ny evidence tending to show that a debtor was merely ignorant in his actions will tend to negate the actual intent to defraud as

long as the debtor did not act in a manner constituting a reckless indifference to the truth." *Id*. (citation omitted).

"'Summary judgment is particularly inappropriate' when an individual's intent is at issue." *In re Swegan*, 383 B.R. at 655-56 (quoting *Hoover*, 307 F.3d at 467). "Even where intent is at issue, summary judgment is appropriate if all reasonable inferences defeat the claims of one side." *In re Swegan*, 383 B.R. at 655-56 (internal citations omitted).

The Court notes that it was after several rounds of questioning at the August 18 Meeting of Creditors that Kopanski admitted that Osiris had the Business Account. Then, only after several rounds of questioning at the September 15 Meeting of Creditors, did Kopanski admit a portion of the Settlement Amount was deposited into the Business Account. The Court is aware of Kopanski's testimony that, within two months of Douglas Kenyon's transfer of $174,000 into the Business Account, she withdrew $18,000 in cash from the Business Account and spent over $1,000 per night to stay in a luxury hotel in Washington, D.C. This may be a continuing pattern of wrongful behavior, however, without an assessment of Kopanski's demeanor and credibility, the Court construes the evidence in favor of the non-movant and determines that genuine issues of material fact remain that must be determined at trial regarding whether Kopanski concealed and omitted information with fraudulent intent.

## CONCLUSION

Having reviewed the record before it and drawing all reasonable inferences in favor of the non-movant, the Court determines as follows for each count in the Complaint:

1. 11 U.S.C. § 523(a)(2)(A): genuine issues of material fact remain as to all elements under 11 U.S.C.§ 523(a)(2)(A);

2.  11 U.S.C. § 523(a)(6): the facts related to the "willful" element are not subject to a genuine dispute and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain related to the "malicious" element;

3.  11 U.S.C. § 727(a)(4)(A): for each of these three statements

    i.   that Kopanski owned a business, but the business never operated or owned assets;

    ii.  that Kopanski only owned or personally used one single personal checking account at KeyBank; and

    iii. that Kopanski used $177,000 of her personal injury settlement to purchase real estate and that the real estate transaction was being litigated

    the facts related to *Keeney* elements 1, 2, 3, and 5 are not subject to a genuine dispute, and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain as to *Keeney* element 4 ("the debtor made the statement with fraudulent intent"); and

4.  11 U.S.C. § 727(a)(2)(A): the facts related to the "concealment" element are not subject to a genuine dispute and are therefore established in the case pursuant to Civil Rule 56(g), but genuine issues of material fact remain as to the "subjective intent" element.

Therefore, the Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

44